two individuals who are overnight guests who are standing directly behind the back door of a house as seen on the video standing on the welcome mat can lawfully be seized at gunpoint when they're not doing anything when they're just going along being what normal people would be when they're guests at a house now the findings of the montanez case rely heavily on what officer believe i believe on page two it talks about that uh rivera seemed nervous all we're asking is that let a jury look at the tape to determine if mr rivera seemed nervous it says that copeland was huddling over nothing on the videotape ever shows mr copeland huddling over but for when he got down on the ground at gunpoint um even in the appellee's answer brief your honor all they say is rabel said this rabel said that rabel rabel rabel rabel if we're to the point now where the officer's word is the gospel then there's no need to even file 1983 complaint because they're always are going to say you know well this is what i believe this is what i saw the great thing about a case with a videotape and what this court normally has held is when there are objective facts i mean this is objective evidence and two people may differ on what they see let the jury decide this um furthermore they rely heavily on um the fact that this there was so-called a rash of burglaries a rash of burglaries that's what rabel said and they submitted as part of his affidavit in support of their uh mushroom summary judgment a google map i asked this court uh it's it's attached as a appendix c um but just take a look at it you'll see the print date of that you'll see when they went and googled that it has a 2016 date so every little alleged burglary that's on that map there's no indication as to whether that was in 2011 10 9 12 13 14 15 or 16 most importantly about this it doesn't indicate the time of the burglary and it is as much as they don't want to agree to it look at it it is a map of pretty much the entire city it goes down to orange city you see deltona in it you can't just take a map some five years later and say oh this is a port of a rash of burglaries they are attempting to put lipstick on a pig but it's still a pig nothing happened on the video that was suspicious whatsoever they claimed that copeland looked around the corner to uh when he just went to the mailbox and you see him picking up some trash but even if he did there's an unmarked car that by their own admission has gone by this house two or three times driving very slowly well the average citizen is going to look and say well i wonder what's going on with that car but again that's not on the tape when we got that order from the district court we honestly said well they're splitting the baby they gave us one and they denied the other and then on appeal we end up losing and i'm not not here to argue that but this was the one that moved us the worst because since when let's just say mr rivera did not walk straight like they claim they said that he walked you know out a little bit and came closer to the house and out again this isn't elementary school your honors we don't have to walk in a single file line since when does not walking in a single file line raise to a level of any type of criminal suspicion now we do believe as we brief that the court used the improper mean to determine whether or not the seizure was justified they applied reasonable suspicion and as the benefactor of one of your previous cases in moore versus peterson this court has clearly now enunciated that terry and reasonable suspicion does not apply to the home and what we have here are two overnight guests again in the clear curtilage of the home the the video and i printed out some of the pictures they're not only on the concrete slab i'm sorry there's an overhang there's three walls surrounding them they're just there smoking a cigarette and then i started thinking since when do burglars take a smoke break if what he saw was so criminal he never saw these two people trying to hide never saw them duck cover but more importantly at the time he came out with the gun they were taking a smoke break in all of my time in criminal law i've never seen a criminal in the process of a crime take a smoke break this we believe is unreasonable but what has happened is the and over time this arguable reasonable suspicion and arguable probable cause has become extremely arguable you have people that have graduated from major universities today that will argue with you and i that the world is still flat or that there's no global warming even though they see that the polar bears are dying or floating off the empirical evidence is there or they'll say up vaccines call autism no vaccines keep children from getting infectious diseases similarly that is what they are arguing they're trying to come up with possible conclusions that this innocent behavior could have led to but the 500 pound gorilla that wasn't addressed in montanaz and hasn't been addressed here is why would you dismantle cameras what does dismantling of cameras have to do with you believing a burglary is in progress not only the outside cameras and i actually put the time down but if you just looked at the video you'll see them getting on the ladder and and and twisting off cameras also the inside cameras but again you claim arguably that these two individuals that you saw were engaged in a burglary much of their uh argument in their uh answer brief deals with facts that were only known after the seizure and i'm asking this court not even to consider them that the fact that he had two sandwich knives in his pocket unless officer rabel has x-ray vision he didn't see those the marks that they said they saw in the back door again he didn't see those the fact that their address didn't match even though they were overnight guests and information was provided for that they didn't even have the ids at the time of the initial seizure so even if probable cause was not the standard even if this court were to say that the gunpoint was not a de facto arrest even though i briefed that issue and which was unresponded to by the appellees um notwithstanding that the reasonable suspicion was not met so on two fronts by the first we believe the district court applied the wrong standard but even if they did apply reasonable suspicion and i would argue that clark a unreported this opinion is the only case that they've ever cited to to suggest that you could apply reasonable suspicion to the home and i would distinguish clark because clark dealt a area of a bunch of vacant homes vacant yes sir i'm enjoying your argument so much i really hate to interrupt you but i did i did have a question uh i understand that you take the position the facts are in dispute but when we evaluate uh this case don't we evaluate it from the eyes through the eyes of a reasonable police officer reasonableness is the linchpin but what i implore this court to to to to address again is that standard don't just let them argue that the rule is flat when all the evidence says it is round the tape speaks for itself beginning with the claims that he says that uh the the the walking pattern of mr rivera at the time he said that happened you see mr rivera standing still he's standing still on the tape what this court has said over and over again when two sides can reasonably differ as to what's seen on the tape let the jury see the tape not just let the officer say well this is what i believe but even in believing that what's the crime and not walking straight i mean that's i'm asking what's the crime on talking on a phone i mean you believe these people are burglarizing because and i may go a little bit over because um there's no cars there but were they going to call uber and say hey come pick me i'm about to steal from this house how are they going to take the things that he's alleging he believed a burglary was in session i asked just to again buttress the dismantling of the tapes those two things do not add up at trial we would have been able to argue to the jury that that's not reasonable for him to believe there's a burglary and his actions don't support it i've gone over my time i see if there's no further questions right now i would like to be able to all right we'll give you your full time for rebuttal may it please the court good morning kevin bledsoe on behalf of the appellees in montanez versus carver hall this court reviewing an identical record de novo found that the officers had actual probable cause to suspect that rivera and copeland were committing a burglary and therefore they had exigent circumstances to go inside the house without a warrant so the district court we're not worried about the search are we no we're not worried about the search but in montanez uh the court did uh decide on probable cause to believe that the decided last year well after this incident that y'all correct but i think the court is bound by the prior precedent of montanez when the montanez opinion is actually reviewing the identical set of facts precedents right broad term to use are you saying we're bound by the facts as recited by the uh panel in montanez i believe that you're you're bound by the the the conclusion of law which involves applying the law to the facts and what the montanez opinion uh decided is that the decision about whether the search was lawful turns on whether or not the officers had probable cause to believe that this was a burglary right but the decision about the search involved the consideration of additional evidence there that uh we will not be considering for example the finding of the the critical event in this case well well it depends on what you call the critical event uh it occurred within uh seconds uh you know maybe a minute certainly there was the initial stop and the initial stop the facts were analyzed by the montanez court and and by the district court as well uh it involved you know again the undisputed facts that there was a rash of anxious that there were no cars at the house that he was on a cell phone that he was taking kind of an unusual route uh on the perimeter of of the home uh and that the other suspect looked like he was in a position of a lookout now this is these aren't disputed facts these are uh facts that in fact uh the appellants agreed to so there's nothing about the video that that is is going to contradict what both officer rabel and rivera agree occurred before the video starts meaning we don't have video of his demeanor and his actions out on the corner but but but rivera himself acknowledges yes i was scared i was shaky these are his words he says my anxiety was going crazy and can i can i ask you um by the way i i was thinking we were talking about another case i understand montanez was the co-defendant this is i'm sorry i was correct correct um thinking about another case um and i do think they're the facts are different that the court relied on that case and then the facts that we can rely on in this case i don't i don't think we're bound by that but can i just i mean weren't rivera and copeland on the curtland on the i think they they were you know in in the in the doorway outside of the of the resident so i i think it would be the curtilage but it's of course you know the curtilage that somebody could walk up to if they go into the house i think what's important in this case is that obviously the officers had exigent circumstances to believe that they were burglarizing the place and you know did not believe that they were you know the lawful uh residents in there i don't think it's clearly established at all that uh you know the payton versus new york uh uh idea that you need to have a warrant to enter into the home applies to the curtilage and it certainly wasn't clearly established in march of 2011 i think the case that my colleague refers to the moore versus peterson case was a 2015 case this is march of 2011 so there's no uh no clearly established law that says that uh that the standard of stopping somebody outside the physical threshold of the home requires both probable cause and a warrant and i think that you know as the montanez case said it would be uh make no sense to compel an officer who's confronting a suspected burglary to to quit the scene and and get a warrant before stopping uh the culprits or the suspected culprits what is the explanation for the manipulation of the cameras that happened uh hours after uh of the initial stop uh and that was because the officers are at that point are going to be conducting a a pursuant to a warrant a search and and the concern was that they they didn't want that to be something that somebody could remotely see how they uh were conducting the search of the home with the warrant but that didn't affect in any way and even you know montanez in the deposition in the record that didn't affect his ability to uh have the recording he says that he just i mean if you take his like most favorable to him he says i just chose not to record the earlier parts because i thought the most important part for for my purposes was you know the actual uh stop and so that's why we don't have what happened you know three minutes four minutes five minutes before uh the actual stop the things that caused rabel to be concerned that there was a burglary the things that caused rabel to call in the signal 21 to call his fellow officer and to meet with the fellow officer you know at the uh at the gas station beforehand all those things that aren't disputed because rabel himself says yes you know you know scared yes shaky anxious i was all those things now he says that was because i got a phone call and i was going to go to new jersey but i really was you know actually nervous and pacing you were you out kind of on the perimeter of the house not you know going from the front to the back without actually going on you know the property says yes now the reason that i was doing that was because i don't like to get my shoes dirty but you know from my officer's perspective it looks like this is an individual who's you know has anxiety he's nervous he seems to be trying to avoid being seen on the of the circumstances the rash of daytime burglaries the anxious pacing on the street the fact that there's no cars in the home uh the time that it was occurred in that unusual route all those things and the other suspect looking like a lookout that that both the district court and the 11th circuit determined was you know uh reasonably suspicious and in fact the 11th circuit said probable cause now they do do the initial stop and they are in the process of you know one securing the suspects checking their ids and to find out that it's not they don't match the residents uh they at that point uh you know see the knives see the pry mark so that increases the the concern and all this is happening in a very short period of time and and then within 10 minutes they they they have other grounds obviously to to arrest the the suspects meaning the the warrant for the arrest as long as well as the possession of the suspended uh driver's license so you have to consider the totality of the circumstances do you agree that we evaluate them through the eyes of the police officer yes i think that's absolutely true who are making decisions that you know attends you know uh in uncertain circumstances so uh and again i think that's why both the district court and the 11th circuit in the earlier case determined that there was you know reasonable grounds to be concerned and during that period of time when they've they've secured the suspect they are actively investigating and and making sure that they want to go inside to make sure they're not additional perpetrators or suspects uh inside the home and and obviously running their ids which which lead to lead to their arrest um you know i want to emphasize the fact that you know uh these officers are entitled and certainly officer rabel is entitled to qualified immunity which means that you know there needs to be clearly established law to show that under these set of circumstances uh that the officer did not have uh grounds to stop uh this individual these individuals and and in this circuit that that means generally speaking binding president from the united states supreme court the 11th circuit or the florida supreme court so they would have noticed that when you see these set of circumstances this would not give you uh grounds to stop uh you know the the uh my colleague hasn't cited any case to show that now he does say that the you know the clark case which i cited which seems to be very much on point is an unpublished opinion but he hasn't cited any case to show uh that uh these set of circumstances do not establish uh either uh arguable reasonable suspicion actual probable cause or arguable probable cause either one now obviously we have a case now and you know it's it's it's the matinez case uh that is analyzing this very set of facts and i do believe that the that case does indicate that the officers had probable cause probable cause for the initial stop which only increased when they find shortly thereafter shortly after stopping them that one of them has knives they are scratch marks on the door consistent with those knives and the ids don't match the residents so you know it's unfortunate that we don't have the video showing what exactly you know rivera was doing that uh that uh officer rabel found suspicious but we you know we do have you know rivera's own testimony so it these facts again aren't just undisputed they are in fact confirmed by the appellants now he again has you know says i wasn't burglarizing the place and i think in the light most favorable to him you should you should accept that but you also have to nervous pacing taking an unusual route around an area that has a a rash of of daytime burglaries with regard to the the the the map uh in rabel's affidavit uh you know rabel submitted an affidavit saying that there was a rash of daytime burglaries in march of 2011 uh that happened uh you know 2011 uh burglaries in that area now again you know you have to kind of look at his deposition and realize where route 44 is and where 15a is uh but there's no counter you know he hasn't submitted any affidavit or uh you know deposition testimony to counter uh what both uh what rabel says and he certainly doesn't hasn't submitted anything to counter what both rabel and his own client says about his own client's behavior so unless the court has any questions uh i think uh i think that the the the appropriate thing to do is to to affirm the district court's decision and and i think that the certainly the matinez case you know i think it's controlling but i think it certainly should be persuasive for all the reasons you have any authority that is which i think would be uh i guess the united states art versus archer case is your theory that there's some kind of privity or something of that nature between co-defendants i think it's the fact that uh you know that again that that i mean what's unusual about this is is that it that the the montanus case is so on point i mean you know normally it's just that uh you know there's a decision by a prior you know uh uh panel that is that is that is factually similar here it's actually factually identical um and i think when you look at the montanez case you know what the montanez case is saying is that you know here i'm reading on page 211 whether the first two entries into montanez residents were constitutionally permissible turns on whether the officers had probable cause to suspect a burglary if they did then they could enter and it seems clear to us that they did so it's identifying the issue you know whether the officers had probable cause and it says its decision turns on the resolution of that issue it it it reaches a conclusion it seems clear to us that they did and of course it analyzes the facts in great detail uh both in the beginning of the opinion and in the end and it's talking about both both the initial stop and the reasons for the initial stop and and the fact that that that uh you know again after obviously finding the knives and seeing the scratch marks which occurred shortly thereafter uh you know that that that that that that suspicion even increased so again we feel that the uh the times i have a question i want to ask you but you can i'll wait if there's some points you want to make um i don't know y'all i'll take the question here's my question here i'm curious as to what your theory of your case is is this is it that these officers uh legitimately thought this was a burglary in progress but they're wrong or did they have some ulterior motive it wasn't really an honest evaluation of of the facts to lead them to believe it was a burglary or is it something else i don't understand the theory of the case trial wise uh if we would have gotten the trial mr montanez would have uh testified as to what he was informed the reason for the search was which had to do with drugs that question leads into thinking so it's a pretext your position is this a pretext for a drug search yes yes and we were precluded from doing that because of the summary judgment based upon reasonable suspicion um you all ask the question if you look on camera one at 1201 27 which is about maybe 40 minutes after this incident not hours you see an officer meddling with the camera so again the whole meddling with the camera shows the unreasonableness of the position that we did this seizure based upon a belief that there was a burglary the one they keep pointing about this rash of burglaries and they still didn't address it he attached a 2016 map nothing on that map establishes the dates of which these burglaries occurred they cannot rely upon that now whether or not you're bound by the facts of the previous case first i argue that you don't but it's only up to a certain point he keeps saying there's probable cause because it's been previously found in the montanez decision but if you strip away those facts that were found after the gun point seizure on the curtilage of the home they don't have it if there's a page on there that said the walking in the either the district court's order or the appellate order that the unusual walking that's not on tape that the hunching over which this is on tape but it's not on tape if that arose a probable cause i would eat that page or two with some mustard it's not on there it's not on there because that's not how the court addressed it because it came to the court in montanez on whether or not it was probable cause plus exigent circumstances he keeps calling this a stop there are no stops in the home as i did argue in peterson that's been clearly established by the fourth amendment itself sometimes the law is so clear that you don't have to have a ruling to say that well you know this you should know this you should know this that you do not have terry stops at the home and that is apparently occurred but for the gun the gun takes terry right out of it the gun now makes it probable cause and there's never been an analysis as to whether or not at that point but i'll ask the courts consider this this was are you saying that once the gun came out it was an arrest it was a de facto arrest all of the qualifications were there and was not addressed by the district court that they were ordered down um they they were not free to leave and they were then cuffed all this happened before finding of the knives i have to say somebody was pointing a gun at me i would think i was under arrest but i'm not sure that that's consistent with 11th circuit precedent but it's not per se but there's an inquiry that has to transpire that wasn't transpired because the court just said oh we're going to go a reasonable suspicion we're going to call this a stop the court never addressed the curtilage that we see this occurred on again that takes it in to probable cause the one thing i would ask the court to consider though if this is such a burglary and you think something is happening then he go and meet up with another officer if time is of the essence and and something dangerous is happening the same way you came out by yourself with this gun the second time around you would have done it the first time around these are the facts that are disputed i understand that we have to look at a reasonable officer but we also have to look at the reasonable officer in light of the objective facts we cannot let them put the lipstick all over this pig and say let's kiss it what we have to do is say well is it reasonable for him to make this argument that what he saw was probable cause of a burglary and i would submit that again where they're going to take the loop they got to call uber or something because there's no car so if you objectively and reasonably look at these facts you all we were asking for is can a jury of our client's peers say whether or not what this officer did was reasonable i mean we're not getting into his i mean it's cited in his depo that you know he's done this before he's caused injury to people because he has violated the home with his gun and shot people this i hate to interrupt you too but i want to be sure i'll leave you your minute for your closing okay um so if it i agree i mean that's got to be curtilage i mean it's but the this incident is that a problem for you your honor i don't believe it's a problem because when you read those opinions they cite older cases and what we're dealing with here again is right outside i mean he's on the welcome mat i mean they're right there but even if it's not then let's address it from reasonable suspicion what burglar sits there and smokes a cigarette um y'all i'm at my minute but you all can feel free to interrupt me what what i want we want to okay um the 14th amendment is not arguable it's a truism it's immutable its roots go back to our declaration of independence and today of all days this is normally a holiday i normally don't work on this day this is the 65th anniversary of brown versus the board of education where a court that had at least three members from the deep south decided unanimously to give the 14th amendment some teeth over the years it's had gum disease when it comes to 42 uh usc 1983 which was promulgated to enforce the 14th amendment because of this uh arguable standard i'm asking right now that you all give this 14th amendment some dentures on this day all right yes sir go ahead you're about to run out of time that's right if i'm a police officer and i have probable calls that are burglaries in progress what relevance does whether or not the suspect is in the cartilage or outside the cartilage have to do with anything that's a good question your honor and that's why we're here probable cause was never established that at the time of the gunpoint at the time of that seizure that probable cause existed so that's the question it's really not whether or not they're inside the cartilage or outside the currently whether or not there's probable cause or reasonable belief right that they're committing a burglary and it had but it has to be probable cause and not reasonable suspicion that is the issue and when you look at montanez the probable cause came after the seizure all of those points that cited oh i'm over my time in montanez were things that were found after the seizure we ask that this court uh reverse uh and send back to the uh district court uh reversing the granting of the summary judgment and allow the jury the peers to decide this matter thank you